51 CCPA

**Application of Wilhelm Adolf CAUER, Deceased, by Adelheid Marie Cauer, Heir, Karoline Helene Cauer, Heir and Guardian of Minor Heirs.**

Patent Appeal No. 7091.

United States Court of Customs and Patent Appeals.

June 11, 1964.

Rines & Rines, Robert H. Rines, David Rines, Boston, Mass., Nelson H. Shapiro, Washington, D. C., for appellants.

Clarence W. Moore, Washington, D. C., (S. Wm. Cochran, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

WORLEY, Chief Judge.

The heirs of one Wilhelm Adolf Cauer appeal from the decision of the Board of Appeals which sustained the examiner's rejection of claims 1 through 25, the remaining claims in Cauer application Serial No. 356,492, filed May 20, 1953, for Radio-Wave Pulse Systems.

Certain claims were rejected on the prior art, but all were rejected on the ground that appellants are barred from obtaining a patent by the last provision of Section 3 of Public Law 380, 80th Congress, 61 Stat. 794, enacted August 6, 1947. Since it is our view that the board's decision must be affirmed on the latter ground, neither the subject matter nor the rejection on prior art requires discussion.

Public Law 380, in pertinent part, provides:

"Sec. 3. Nationals of Germany and Japan may hereafter apply for and obtain patents in the United States for their inventions in accordance with the patent laws and enjoy the rights and privileges thereof: * * * And provided further, That, except for patents based on applications filed in the United States Patent Office prior to the date of enactment of this Act, patents may not be applied for or obtained, or if obtained, shall not be valid, *for any invention made,* or upon which an application was filed by any such national, before Jan-

uary 1, 1946, in Germany or Japan or in the territory of any other of the Axis Powers or in any territory occupied by the Axis forces. (Emphasis supplied.)

The board briefly, and we think correctly, found the facts to be as follows:

"It appears from the record that while living in Germany W. A. Cauer, the herein named inventor, made certain notes concerning the instant device, but did nothing more in respect to said device, prior to January 1, 1946, the critical date stated in the aforementioned proviso. There is nothing in the record to denote Cauer as anything other than a German national. The notes were carried out of Germany by another, eventually to develop into the present application. Cauer himself was killed prior to January 1, 1946."

In deciding whether Cauer's invention was "made * * *, before January 1, 1946" within the meaning of the statute, the board stated:

"As we see it, the making of an invention is synonymous with the completion of such invention, and the usual meaning in patent parlance for completion of an invention embraces a conception thereof, and a reduction to practice, either actual or constructive. On such a basis, appellant argues that since there was here no reduction to practice prior to January 1, 1946, there was no invention made prior to this date, and therefore nothing to be prohibited by the Statute.

"We are not able to agree that the term in question, as used in the involved proviso of Section 3 of Public Law 380, would have the meaning argued for by appellant, when consideration is given to the purpose of this proviso as evidenced by the intent of its framers.

"In the Report of the Committee on the Judiciary of the House of Representatives in connection with Public Law 380 (80th Congress, 1st

Session, House Report No. 1060, page 3) the following appears in explanation of said proviso of Section 3:

"'In addition, section 3 provides that patents may not be obtained in the United States for inventions made before January 1, 1946. Enactment of such a proviso is considered necessary since it will prevent the patenting here of inventions made by Germans and Japanese during the war, in fact, of all inventions made before January 1, 1946, many of which were brought to this country by operations after hostilities ceased and were made available and given freely to the American public. A similar law has been enacted in Great Britain.'"

Similar language appears in the corresponding Senate Report (80th Congress, 1st Session, Senate Report No. 728, page 3).

"As is well known, upon the cessation of actual hostilities of World War II, much information including mere writings or inventive concepts was collected by official personnel from various repositories in Germany, for example, and made available to the American public, as through the Office of Technical Services. The above quotation from the House Report would appear to denote as a clear motivation for the proviso of concern the protection of those members of said public acting on such freely given inventive concepts. With this as motivation, it seems clear to us that said proviso was intended to cover mere conception, and thus the notes made by Cauer would fall under the proscriptions thereof. That such notes must have been sufficient to constitute a proper conception would follow if they are to be considered as enough as the basis for the instant application."

Appellants state that the board "admitted that if the words *invention made*

are used in the same sense that patent lawyers use them, that [sic] the statute does not bar the present application." They argue that the board erred in holding that the intent of the framers of the act was not to use those words in that sense, and contend instead that "the phrase 'invention made' was actually used with the *usual* meaning in patent parlance by patent lawyer framers."[1] Under such circumstances, appellants contend, "the Board concedes that there is 'nothing to be prohibited by the statute.'"

 We do not regard it as significant whether "patent lawyers," who obviously would realize that the term "invention made" might sometimes be used in specific situations in patent practice as indicating a reduction to practice, suggested that term in connection with the consideration of Public Law 380 by Congress. Our only concern is what Congress intended by enacting Section 3 of Public Law 380, i. e., what that Act sought to accomplish. We think the board correctly analyzed the Act as having as an objective the protection of those members of the public who might act on those writings or inventive concepts collected from various repositories in Germany and Japan that were made available after the cessation of actual hostilities of World War II. The term "invention made" cannot be given an interpretation inconsistent with that objective, as the interpretation advanced by appellants would. Rather, it must be construed in the general and less technical sense necessary to include "inventions" of the type made available to the American public as described in the Committee Report quoted by the board[2] without regard to whether they were *reduced to practice* before January 1, 1946.

Appellants additionally suggest that Cauer was not a "German national"

because the German Government "declined to consider" him such. However, appellants' oath in the application describes him as "late a citizen of Germany and a resident of Gross-Berlin, Germany." Appellants have not established in this record that Cauer was not a German national, thus we can only regard him as one of those subject to the provisions of Section 3 of Public Law 380.

The decision of the board is affirmed.

Affirmed.

---

1. In support of the contention that *"patent lawyer* experts of the Patent Office itself" were actually the "framers" of the phrase "invention made," appellants refer to certain documents in a file of the Commissioner of Patents on Public Law 380. Those documents are not part of the record here.

2. It is apparent that the Act does not attempt to differentiate between "inventions" on the basis of whether they were actually brought into this country.